**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

**RICHARD ALAN DAVIS**                                                              **PLAINTIFF**
**ADC #89568**

**v.**                          **Case No. 5:15-cv-00105 KGB/PSH**

**TONDA L. SPENCER**, *et al*                                                    **DEFENDANTS**

<u>**ORDER**</u>

      Before the Court is a Proposed Findings and Recommendation ("Recommendation")
submitted by United States Magistrate Judge Patricia S. Harris (Dkt. No. 89). Plaintiff Richard
Alan Davis filed a timely motion for an extension of time to file objections to the Recommendation
(Dkt. No. 90). Mr. Davis's motion for an extension of time is granted (Dkt. No. 90). The Court
finds that Mr. Davis's objections to the Recommendation were timely filed and will be considered
by the Court (Dkt. No. 91).

      Mr. Davis is an inmate at the Arkansas Department of Correction's ("ADC") East Arkansas
Regional Unit. He brings this action against defendants Tonda L. Spencer, Chamoz Jones, Yulinda
F. Campbell, Cynthia Rose Reed, Randy Watson, and Floria Washington in their individual
capacities (collectively, "ADC defendants").[1] The ADC defendants filed a motion for summary
judgment on all of Mr. Davis's claims (Dkt. No. 79). In the Recommendation, Judge Harris
recommends that the Court grant the ADC defendants' motion for summary judgment and dismiss
with prejudice Mr. Davis's remaining claims (Dkt. No. 89, at 13). After reviewing the
Recommendation and objections, and conducting a *de novo* review of the record in this case, the

---

[1] The Court dismissed without prejudice Mr. Davis's claims against Lorie A. Taylor, Terrie
L. Banister, Raymond Naylor, and Wendy Kelley by previous Order (Dkt. No. 54).

Court adopts the Recommendation (Dkt. No. 89).  The ADC defendants' motion for summary judgment is granted (Dkt. No. 79).  Mr. Davis's claims are dismissed with prejudice.

In his objections to the Recommendation, Mr. Davis argues that the defendants mischaracterize his due process claims against Mr. Watson and Ms. Washington.  The Court writes separately to elaborate on the issues raised in Mr. Davis's claims against Mr. Watson and Ms. Washington.

## I.      Background

Mr. Davis is an inmate housed in the Varner Super Max Unit ("VSM").  While the parties disagree as to the exact date, there is no dispute that Mr. Davis was placed in administrative segregation in 2013.  Mr. Davis claims that he was placed in administrative segregation on May 29, 2013 (Dkt. No. 2, at 14).  The ADC defendants claim that he was placed in administrative segregation on July 10, 2013 (Dkt. No. 80, at 1; Dkt. No. 79-1, at 3).  There is no dispute that Mr. Davis remained in administrative segregation until after he filed this action on April 6, 2015 (Dkt. No. 80, at 1-2).  It is unclear on the record before the Court as to whether Mr. Davis remains in administrative segregation at this time.  Mr. Davis claims that, while assigned to administrative segregation, he:  (1) had limited physical contact with other inmates; (2) was required to take his meals in his cell; (3) was denied the opportunity to participate in group religious services; (4) was permitted five hours a week of recreation time; (5) was not permitted to have contact visits with friends or family; and (6) was not permitted to leave his cell without wearing handcuffs and shackles (Dkt. No. 91, at 8; Dkt. No. 2, at 18).

ADC Administrative Directive 14-07 ("AD 14-07") provides the policy and procedures for administrative segregation in VSM (Dkt. No. 79-2).  AD 14-07 provides that once a prisoner is placed in administrative segregation, the Institutional Classification Committee or authorized staff:

[M]ust review the status of every inmate assigned to administrative segregation classification every seven (7) days for the first two months, and every thirty (30) days thereafter to determine if the reason(s) for placement continue to exist. At every other, of these 30-day reviews, the inmate will be personally interviewed by the Classification Committee or authorized staff.

(*Id.*, at 4). AD 14-07 also provides that "[n]o inmate shall remain in a segregation classification for more than one year unless he has been personally interviewed by the Warden at the end of one year and such action is approved by him" (*Id.*). There is no dispute that Mr. Davis was provided with the opportunity "to meet with the classification committee to consider his continued placement in administrative segregation every 60 days as required by ADC Administrative Directive 14-07" and that "[a]t each classification hearing, the committee voted to keep Davis on administrative-segregation status" (Dkt. No. 80, at 1). There is also no dispute that the Warden's review, which should have been held before Mr. Davis was detained for over a year in administrative segregation in accordance with AD 14-07, did not occur until September 19, 2014, which was at least over 14 months after Mr. Davis was placed in administrative segregation (Dkt. No. 79-3, at 1). Mr. Davis claims that Mr. Watson, the Warden of VSM, violated his due process rights by failing to conduct his review within a year after Mr. Davis was placed in administrative segregation (Dkt. No. 2, at 5).

On October 29, 2014, Mr. Davis was sentenced to 30 days in punitive isolation (Dkt. No. 79-1, at 1). During the time that Mr. Davis was in punitive isolation, he was found guilty of committing new disciplinary violations and was sentenced to an additional 10 days in isolation (Dkt. No. 80, at 5-6). ADC Administrative Directive 12-24 provides that:

Inmates may be confined to punitive segregation for a period up to 30 days. Inmates serving consecutive punitive isolation sentences will receive 48-hour relief at the end of each 30-day sentence. Inmate privileges . . . will be restored during the 48-hour relief period and will be restricted again at the beginning of the next punitive sentence.

(Dkt. No. 46, at 21).  There is no dispute that Mr. Davis was not provided with 48-hour relief after he served 30 days in punitive isolation (Dkt. No. 81, at 26).  The ADC defendants admit that Mr. Davis's 10-day isolation sentence was "stacked onto his 30-day isolation sentence that began on October 29, 2014[,]" meaning Mr. Davis served 40 consecutive days in punitive isolation (*Id.*). Mr. Davis claims that Ms. Washington, the Classification Officer of VSM, violated his due process rights by allowing him to be held in punitive isolation for 40 consecutive days (Dkt. No. 2, at 44-46).

Mr. Davis also claims that separate defendants Tonda Spencer, Chamoz Jones, Yulinda Campbell, and Cynthia Rose Reed violated his First Amendment rights by filing allegedly false disciplinary charges against Mr. Davis in retaliation for grievances that Mr. Davis filed against them.

## II.      Discussion

The Court approves of and adopts the Recommendation, but the Court writes separately to elaborate on the issues raised in Mr. Davis's claims against Mr. Watson and Ms. Washington.

### .      A.      Administrative Segregation

Mr. Davis claims that his due process rights were violated when Warden Watson did not personally interview him when his term in administrative segregation reached a year.  The ADC defendants concede that Mr. Watson did not conduct Mr. Davis's review until at least 14 months after he was placed in administrative segregation, in violation of AD 14-07 (Dkt. No. 81, at 7). Despite this fact, the ADC defendants argue that Mr. Davis's claim fails for two reasons.  First, they assert that the "violation of a prison's policy is not a violation of the Fourteenth Amendment" (*Id.*, at 6).  *See Gardner v. Howard,* 109 F.3d 427, 430 (8th Cir. 1997).  Second, they argue that Mr. Davis "has not alleged, much less presented any evidence, that he was subjected to atypical

conditions of confinement" (*Id.*).  In the Recommendation, Judge Harris agreed with both of these arguments and recommended dismissal of Mr. Davis's claim against Mr. Watson (Dkt. No. 89, at 10-11).

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property[] without due process of law." U.S. Const. amend. XIV, § 1.  To prevail on his due process claim, Mr. Davis "must first demonstrate that he was deprived of life, liberty, or property by government action."  *Phillips v. Norris,* 320 F.3d 844, 846 (8th Cir. 2003).  As Mr. Davis was not deprived of life or property, "he must identify a liberty interest in order to sustain his due process claim."  *Id.*, at 847.  In *Sandlin v. Conner*, the Supreme Court established that a prisoner's liberty interests "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 483–84 (1995) (internal citation omitted).  Therefore, "'[i]n order to determine whether an inmate possesses a liberty interest, [courts] compare the conditions to which the inmate was exposed in segregation with those he or she could expect to experience as an ordinary incident of prison life.'"  *Orr v. Larkins*, 610 F.3d 1032, 1034 (8th Cir. 2010) (quoting *Phillips*, 320 F.3d at 847).  The procedures used to confine the inmate in segregation are irrelevant to the question of whether an inmate's liberty interest was affected by being placed in segregation.  *Id.*

The ADC defendants claim that Mr. Davis "asks the Court to rule that a violation of an ADC policy designed to provide regular and meaningful meetings with administrative-segregation inmates, the prison's classification committee, and the warden, amounts to a deprivation of a liberty interest protected by the Amendment" (Dkt. No. 81, at 9).  In his response to the ADC

defendants' motion for summary judgment, and in his objections to the Recommendation, Mr. Davis argues that the ADC defendants mischaracterize his asserted liberty interest (Dkt. No. 85, at 9; Dkt. No. 91, at 4-5). Mr. Davis emphasizes that he was held for 16 months in administrative segregation before Mr. Watson conducted his Warden review and that being held in administrative segregation for this duration of time constitutes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life (*Id.*).

The ADC defendants' characterization of Mr. Davis's argument is understandable, as the argument is inartfully plead. However, construing Mr. Davis's argument liberally, as the Court must for all *pro se* litigants, the Court finds that Mr. Davis's asserted liberty interest is that he was held in administrative segregation for such a long period that it constituted an atypical and significant hardship. Accordingly, the Court will determine whether being held in administrative segregation for approximately 22 months under the conditions imposed on Mr. Davis constitutes a liberty interest that implicates the Due Process Clause.[2]

The Eighth Circuit Court of Appeals has "'consistently held that a demotion to segregation, even without cause, is not itself an atypical and significant hardship.'" *Orr*, 610 F.3d at 1034 (quoting *Phillips,* 320 F.3d at 847). However, the Eighth Circuit has held that an extended period in administrative segregation can constitute an atypical and significant hardship under *Sandlin*. In an unpublished decision arising out of Arkansas, which Mr. Davis cites to in his response to the ADC defendants' motion for summary judgment and in his objections to the Recommendation (Dkt. No. 85, at 8; Dkt. No. 91, at 4), the Eighth Circuit concluded that a 12-year term in

---

[2] The Court determines that the exact date that Mr. Davis was placed in administrative segregation is not a material fact for the purposes of this Order. Even if Mr. Davis was placed in administrative segregation on May 29, 2013, as he claims, the Court would find that his confinement does not constitute an atypical and significant hardship. Therefore, the parties' dispute over dates does not preclude summary judgment.

administrative segregation constituted "an atypical and significant hardship, considering the particular restrictions imposed on [the plaintiff] in relation to his ad seg status during this time, and thus he had a liberty interest protected by the Due Process Clause." *Williams v. Norris*, 277 F. App'x 647, 648 (8th Cir. 2008) (unpublished) (per curiam). In reaching its conclusion, the Eighth Circuit cited with approval a case from the Second Circuit Court of Appeals, where the court noted that "[s]egregation of longer than 305 days in standard [special housing unit] conditions is sufficiently atypical to require procedural due process protection under *Sandin*." *Iqbal v. Hasty*, 490 F.3d 143, 161 (2d Cir. 2007), *rev'd on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Relying on this Eighth Circuit decision, the United States District Court for the Eastern District of Missouri concluded "that the Eighth Circuit would find that Plaintiff's 19 months in administrative segregation at SECC triggered due process protections." *Thomas v. Thompson*, No. 4:13CV622 AGF, 2015 WL 222165, at *5 (E.D. Mo. Jan. 14, 2015).

Two decisions from the Eighth Circuit lead the Court to conclude that Mr. Davis's confinement in administrative segregation was not an atypical and significant hardship, giving rise to protection under the Due Process Clause. In a 2016 decision, the Eighth Circuit held that a term of approximately one year in administrative segregation under ordinary conditions was not "'the type of atypical, significant deprivation in which a state might conceivably create a liberty interest.'" *Ballinger v. Cedar Cty., Mo.*, 810 F.3d 557, 562–63 (8th Cir. 2016) (quoting *Wycoff v. Nichols*, 94 F.3d 1187, 1190 (8th Cir. 1996)). In reaching this conclusion, the Eighth Circuit clearly diverged from the law of the Second Circuit, which it previously cited to with approval in *Williams v. Norris*. However, the Eighth Circuit's decision was consistent with Eighth Circuit precedent, as the court previously found that a prisoner's 26-month term in segregation under relatively normal conditions did not constitute an atypical and significant hardship. *Rahman X v.*

7

*Morgan*, 300 F.3d 970, 973–74 (8th Cir. 2002).  The court remarked that, "[a]lthough the length of time [the plaintiff] was kept in a segregation cell was substantial, he was not subject to the hardships that prisoners placed in that ward for punitive reasons face."  *Id.*

In this case, Mr. Davis had been held in segregation for approximately 22 months when this action was filed.  Mr. Davis claims that, during his time in administrative segregation, he:  (1) had limited physical contact with other inmates; (2) was required to take his meals in his cell; (3) was denied the opportunity to participate in group religious services; (4) was permitted five hours a week of recreation time; (5) was not permitted to have contact visits with friends or family; and (6) was not permitted to leave his cell without wearing handcuffs and shackles (Dkt. No. 91, at 8; Dkt. No. 2, at 18).  The Court finds that living under these conditions for approximately 22 months does not "present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest."  *Sandin*, 515 U.S. at 486; *see also Ballinger*, 810 F.3d at 562-63 (finding that the conditions the plaintiff was held under while in administrative segregation were not materially different from normal prison conditions where the plaintiff alleged that he was completely isolated from the general population and had "limited access to showers, social interaction, a telephone, and exercise").  Therefore, the ADC defendants' motion for summary judgment is granted to the extent that the ADC defendants move for the dismissal of Mr. Davis' due process claim against Mr. Watson.

### B.    Punitive Segregation

Mr. Davis claims that Ms. Washington violated his due process rights by allowing him to be held in punitive segregation for 40 consecutive days.  Mr. Davis asserts, and the ADC defendants do not dispute, that ADC Administrative Directive 12-24 provides that:

> Inmates may be confined to punitive segregation for a period up to 30 days.  Inmates serving consecutive punitive isolation sentences will receive 48-hour relief at the

end of each 30-day sentence.  Inmate privileges . . . will be restored during the 48-hour relief period and will be restricted again at the beginning of the next punitive sentence.

(Dkt. No. 46, at 21).  There is also no dispute that Mr. Davis was held in punitive isolation for 40 consecutive days without any relief beginning on October 29, 2014 (Dkt. No. 81, at 26).  Mr. Davis alleges that while he was living in punitive isolation, his commissary, telephone, and visitation privileges were restricted (Dkt. No. 2, at 44).  The ADC defendants contend that, like Mr. Davis's claims against Mr. Watson, his claims against Ms. Washington fail because "[t]here is no federal constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations" meaning Ms. Washington's admitted failure to provide the 48-hour relief period, "which is a part of the ADC's punitive-segregation policy, does not give rise to a liberty interest and thus does not trigger due process protection" (*Id.*, at 29).  In the Recommendation, Judge Harris agreed with the ADC defendants and recommended dismissal of Mr. Davis's claim against Ms. Washington (Dkt. No. 89, at 11-12).

The Court finds that Ms. Washington is entitled to qualified immunity from Mr. Davis's claims.  "Evaluating whether a government official is entitled to qualified immunity requires a two-step inquiry: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right; and (2) whether that right was clearly established at the time of the defendant's alleged misconduct."  *Wright v. United States*, 813 F.3d 689, 695 (8th Cir. 2015) (citing *Pearson v. Callahan,* 555 U.S. 223, 232 (2009)).  The Court has the discretion to address the "clearly established" prong first.  *Duffie v. City of Lincoln*, 834 F.3d 877, 882 (8th Cir. 2016) In order to avoid summary judgment, Mr. Davis "must offer sufficient evidence to show a genuine issue of material fact about whether a reasonable officer would have been on notice that the officer's conduct violated a clearly established right."  *Wright*, 813 F.3d at 695 (citing *Engleman*

*v. Deputy Murray,* 546 F.3d 944, 947 (8th Cir. 2008)).  Mr. Davis "can show a clearly established right through 'cases of controlling authority in [his] jurisdiction at the time of the incident' or through a 'consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful.'"  *Id.* (quoting *Wilson v. Layne,* 526 U.S. 603, 617 (1999)). Mr. Davis does not offer, and the Court is not aware of, binding precedent from the Supreme Court or the Eighth Circuit establishing that confinement in punitive isolation in excess of 30 consecutive days is an atypical and significant hardship.  Furthermore, the Court notes that the Seventh and Tenth Circuits have both held that confinement in punitive isolation in excess of 40 consecutive days did not constitute an atypical and significant hardship.  *See Singh v. Gegare*, 651 F. App'x 551, 555 (7th Cir. 2016), *reh'g denied* (June 21, 2016) (finding that 105 days in punitive segregation under the conditions imposed on the plaintiff was not atypical and significant hardship); *Meek v. Jordan*, 534 F. App'x 762, 765 (10th Cir. 2013) (finding that the plaintiff's due process claims were deficient as a matter of law because the plaintiff "has not pleaded any facts that would plausibly indicate that 60 days in disciplinary segregation is atypical in relation to the ordinary incidents of prison life").  Therefore, Ms. Washington is entitled to qualified immunity because she did not violate a clearly established right.  The Court adopts the Recommendation as it pertains to Mr. Davis's claim against Ms. Washington.  The ADC defendants' motion for summary judgment is granted to the extent that the ADC defendants move to dismiss Mr. Davis's claim against Ms. Washington.

## IV.    Conclusion

It is therefore ordered that:

1.    Mr. Davis' motion for an extension of time to file objections to the Recommendation is granted (Dkt. No. 90).

2.      The Court adopts the Recommendation (Dkt. No. 89).

3.      The ADC defendants' motion for summary judgment is granted, for the reasons stated in the Recommendation and in this Order (Dkt. No. 79).  Mr. Davis's complaint is dismissed without prejudice with respect to his claims against separate defendants Terrie L. Banister, Wendy Kelley, Raymond Naylor, and Lorie A. Taylor (Dkt. Nos. 49; 54).  His claims against separate defendants Tonda Spencer, Chamoz Jones, Yulinda Campbell, Cynthia Rose Reed, Randy Watson, and Flora Washington are dismissed with prejudice.

So ordered this the 28th day of March, 2017.

_____
Kristine G. Baker
United States District Judge